RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEPHEN DUANE WOODS, JR.,

*Defendant-Appellant.*

No. 24-1988

────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cr-00113-1—Robert J. Jonker, District Judge.

Decided and Filed: March 10, 2026

Before: BATCHELDER, THAPAR, and MATHIS, Circuit Judges.

────────────────

## COUNSEL

────────────────

**ON BRIEF:** Michael R. Bartish, SBBL LAW, PLLC, Grand Rapids, Michigan, for Appellant. Olivia Kay Ghiselli, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

────────────────

## OPINION

────────────────

THAPAR, Circuit Judge. Stephen Woods moved to suppress a pistol that police officers discovered in his car. The district court denied his motion. Because the officers had probable cause to search Woods's car, we affirm.

I.

In September 2023, a woman texted emergency responders that her mother's boyfriend had "slapped TF out of her" mother.  R. 29-1, Pg. ID 83.  She also informed responders that the man had a gun.  So dispatchers sent Officer Guinevere Overly to the apartment complex where the woman resided.  Dispatchers told Overly that the suspect was named Stephen Woods, drove an orange Dodge Charger, and was armed.[1]

When Overly arrived at the parking lot, she met the victim's daughter, who recounted that Woods had put a gun to her mother's chest and slapped her mother in the face.  Overly then saw a man whom she believed to be Woods turn around and walk quickly back into the apartment building.  She couldn't tell where the man went, but she radioed to other officers that the suspect was "running through the building."  R. 29-3, 1:14–1:16.  She next spoke with the victim, who confirmed that Woods had slapped her, kicked her in the chest, and "had his gun to [her] chest."  *Id.* at 2:10–2:17.  The victim described Woods's gun as "small."  *Id.* at 3:28–3:33.  Finally, the victim's daughter told Overly that Woods had an orange Dodge parked in the back of the complex.

Based on this information, Overly radioed the other officers in the area that there was probable cause Woods had committed a domestic assault.  She added that Woods might be headed to his orange Dodge and that he had a gun.  Overly didn't see that gun anywhere in the parking lot or near the apartment.  Other officers then conducted a canine search, but they couldn't find Woods or the gun.

After the canine search, Officer Rachel Blank drove through the parking lots of the apartment complex looking for Woods.  Eventually, Blank discovered Woods in his orange Dodge, so she blocked his car with her police cruiser.  When Woods got out of his car, Blank attempted to detain him, but Woods resisted her efforts until another officer arrived to help.

Once the officers successfully detained Woods, he told them multiple times that he didn't have anything on his person.  One officer then patted Woods down but didn't find a gun.  Other

---

[1]Woods's car was actually an orange Dodge Challenger, not a Charger.  To simplify matters, we refer to the car as an "orange Dodge."

officers used their flashlights to look through the windows of Woods's locked car for the gun, but they didn't see one either.  So Blank used Woods's keys to unlock the car and, after a brief search, the officers discovered a pistol under the front passenger seat.

Since Woods had prior felony convictions, a grand jury charged him with possessing a firearm as a felon.  *See* 18 U.S.C. § 922(g)(1).  He moved to suppress the gun, arguing that the officers' warrantless search of his car violated the Fourth Amendment.  The district court denied that motion.  It concluded that the officers had probable cause to believe that evidence of a crime—the gun—was in Woods's car, so they didn't need a warrant before searching his vehicle.  Woods then pled guilty but reserved the right to appeal the denial of his suppression motion.  He does so now.

II.

This appeal turns on one question:  Did the officers have probable cause to search Woods's car for a gun?  Because they did, we affirm.

The Fourth Amendment protects citizens from "unreasonable searches" of their "effects." U.S. Const. amend. IV.  Generally, this right requires law enforcement to obtain a warrant before conducting a search.  But there are exceptions to the warrant requirement.  As relevant here, the "automobile exception" allows warrantless searches of a car if officers have probable cause to believe it contains evidence of a crime.  *California v. Acevedo*, 500 U.S. 565, 578–80 (1991); *United States v. Simpson*, 138 F.4th 438, 444 (6th Cir. 2025).  So all officers need to search a car is probable cause that it holds evidence of a crime.

"Probable cause is not a high bar."  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (cleaned up).  To search a place, officers need only a "fair probability" that they will find evidence of a crime there.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Here, there was a fair probability that the gun was in Woods's car, so the officers had probable cause to search it.

First, the officers reasonably believed the gun was evidence of a crime.  Two witnesses confirmed that they had seen Woods threaten the victim with a gun and slap her in the face. Those eyewitness accounts established probable cause that Woods had committed the crimes of

assault and intentionally pointing a gun at another person. *See* Mich. Comp. Laws §§ 750.81(1), 750.233(1); *see also United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) (noting that an eyewitness identification can establish probable cause). The gun was evidence of those crimes.

And by the time officers searched Woods's car, there was a fair probability that they would find the gun there. The officers knew from the victim's and her daughter's statements that the gun was last seen in Woods's possession. But they didn't see the gun on Woods's person, near the victim or her daughter, or in any of the complex's parking lots. Nor did they find the gun after conducting a canine search and patting down Woods. That left the one place the police *knew* Woods had just been: his car. The victim and her daughter had mentioned that Woods drove an orange Dodge, and that's exactly where officers found him. Plus, the officers knew that people often hide objects in cars out of plain view. Together, these circumstances created *at least* a fair probability that officers would find the gun in that car.

Woods's arguments to the contrary fall short. He primarily asserts that "there was no greater probability" that the gun was in "his car versus somewhere else he had gone." Appellant's Br. at 17. But greater probability isn't the standard—fair probability is. And under that standard, officers don't need to eliminate all other possible places where evidence might be located. *See United States v. White*, 990 F.3d 488, 492–93 (6th Cir. 2021). True, there were other places where Woods could have stashed his gun. For instance, the victim said Woods knew people who lived in other apartments at the complex.[2] So perhaps Woods might have gone to a different apartment. But that fact doesn't eliminate the fair probability that the gun was in his car—which was where the police found him.

Woods also contends that the officers needed to conduct *all searches* for which they had probable cause or for which an exception to the warrant requirement applied before searching his car. In essence, he believes officers may conduct a warrantless search only as a last resort, or else they are "exploit[ing] illegality." Appellant's Br. at 22 (citing *Wong Sun v. United States*,

---

[2]Woods urges us to consider a portion of Overly's body-camera footage that the district court didn't see. He points to Overly's purported comment that Woods "could be going" to another apartment. Appellant's Br. at 6 n.2. But even if we considered that statement, it would not change our analysis. After all, the record already indicates there was a chance that Woods could have gone elsewhere in the complex. So Overly's recognition of that fact doesn't affect whether probable cause existed.

371 U.S. 471, 487–88 (1963)).  But that argument misstates the law.  Officers need only a fair probability that they would find evidence of a crime in the car to search it, regardless of what other options they may have.  *See Simpson*, 138 F.4th at 444.  And once there is such a fair probability, a warrantless search is lawful.

Relatedly, Woods claims that the officers' searches of his person and the surrounding area weren't thorough enough to eliminate alternative locations for the gun.  But the officers didn't need to eliminate all other options.  *See White*, 990 F.3d at 492–93.  Besides, they *did* take reasonable steps to search Woods and the apartment complex.  One officer patted Woods down (and visually observed him) but didn't find a gun.  As for the apartment complex, the officers conducted a canine search starting at the front of the victim's apartment building, and neither the dog nor the officers found the gun or Woods during that search.  Those reasonable efforts contributed to the fair probability that the gun was in Woods's car.

Finally, Woods contends that caselaw cuts against finding probable cause.  He points to *United States v. Stevens*, in which we held that police had probable cause when they eliminated all alternatives for the suspect's hideout except the final apartment on the third floor of a building.  No. 21-4065, 2022 WL 11684811, at *3 (6th Cir. Oct. 20, 2022).  Yet *Stevens* doesn't turn probable cause into a "high bar."  *See Wesby*, 583 U.S. at 57 (quotation omitted).  Officers there may have eliminated every alternative explanation, but they weren't required to do so.

Woods also relies on two cases in which our court and a sister circuit held that police lacked probable cause to search a car for evidence of a robbery.  *See United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002); *United States v. Edwards*, 632 F.3d 633, 645 (10th Cir. 2001).  But those cases differ from this one in an important way:  Officers didn't arrest those suspects at or near their cars.  *Haynes*, 301 F.3d at 678–79; *Edwards*, 632 F.3d at 645.  Here, officers detained Woods immediately after he emerged from his orange Dodge.  Since the gun wasn't on Woods (or anywhere else the police had looked), a "reasonable officer would have considered it likely that [Woods] had stashed the gun . . . in his car."  *See United States v. Charles*, 801 F.3d 855, 861 (7th Cir. 2015).  That commonsense intuition shows the officers had probable cause to search the car.

To sum up, officers learned that Woods was carrying a gun that was evidence of a crime. They couldn't find him or the gun in the apartment complex. They didn't learn of any other specific locations to search. They found him in his car. And after detaining him and patting him down, they didn't find the gun on his person. Under these circumstances, the officers had probable cause to believe the gun was in the car. So the district court didn't err in denying Woods's motion to suppress.

\*     \*     \*

We affirm.